**CLARK EQUIPMENT COMPANY,**
Appellant,

v.

**Rebecca Ann PITNER, Appellee.**

No. 14–94–00431–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

May 2, 1996.

Rehearing Overruled June 6, 1996.

David S. Lynch, Houston, Peter J. Bambace, Houston, for appellant.

S. Scott West, Houston, Kevin Dubose, Houston, for appellee.

Before LEE, HUDSON and EDELMAN, JJ.

## OPINION

EDELMAN, Justice.

In this personal injury case, Clark Equipment Company ("Clark") appeals from a judgment entered in favor of Rebecca Ann Pitner on the grounds that (1) an expert was allowed to testify even though the substance of his testimony was not provided in interrogatory answers, (2) expert testimony on causation was improperly excluded, (3) psychiatric evidence was improperly excluded, (4) counsel made improper, incurable and prejudicial jury argument, (5) there was no evidence or insufficient evidence to support the jury's finding of a marketing defect, (6) there was no evidence or insufficient evidence that Pitner was a consumer under the Texas Deceptive Trade Practices Act [1] ("DTPA"), and (7) there was no evidence or insufficient evidence of a breach of the implied warranty of merchantability. We affirm the judgment as modified.

In 1978, a forklift was manufactured by Clark and shipped to Southline Equipment Company ("Southline"). Late that year or early in 1979, Southline sold the forklift to Hughes Tool Company ("Hughes"), Pitner's employer.

On June 10, 1988, Pitner was driving the forklift to deliver a pallet of papers and folders to the basement of a building. As she proceeded down the ramp leading to the basement and tilted the forks of the forklift to keep the load level, the engine died. The forklift continued traveling down the ramp, and, as it reached the bottom, Pitner sharply turned the steering wheel to the right and jumped off to the left. She severely injured her right leg upon landing.

Pitner brought suit against Clark, as designer and manufacturer of the forklift, and Southline, as distributor of the forklift, alleging design defect, marketing defect, breach of warranty, and DTPA violations. Southline was nonsuited during trial, and the jury found Clark liable on the marketing defect and DTPA claims. The trial court entered judgment on the verdict and awarded damages, attorneys fees, and interest totaling nearly $750,000.

## Interrogatory Answer on Expert Testimony

In the first of its seven points of error, Clark complains that Pitner's expert witness, Thomas Grubbs, was allowed to testify over objection despite Pitner's failure to state the substance of his testimony in answer to one of Southline's interrogatories. Pitner properly identified Grubbs as an expert witness in response to both Clark's and Southline's interrogatories, and properly disclosed the *subject matter* of Grubbs' testimony in response to Clark's interrogatory.[2] However, Clark complains that, in response to Southline's interrogatory asking for the *substance* of expert testimony, Pitner provided only the subject matter and not the substance of Grubbs'

---

1. *See* Tex.Bus. & Com.Code Ann. § 17.41–.63 (Vernon 1987 & Supp.1996).

2. Clark's interrogatory asked:

 Do you intend to call any expert witnesses at the trial of this cause and if so, identify all experts, their educational background, the number of times they have testified and for whom, all publications by the expert, the compensation of said expert and state the subject matter of their testimony.

 Pitner answered, in part:

 Plaintiff will present those experts Defendants wish to depose at mutually agreeable and convenient dates and times, at which time Defendants may inquire as to the matters and information requested.... If Defendants are not satisfied with obtaining this information through the deposition of desired experts, then Defendants are requested to immediately advise Plaintiff in writing, and then Plaintiff will attempt to compile and provide the requested information.

 A list of names and addresses of expert witnesses was also provided. Following each, the subject matter of their testimony was stated. In addition to the name and address for Grubbs, Pitner's response stated, in part:

 Mr. Grubbs may testify as to the design, marketing, operation and warranty aspects of the forklift made the basis of this lawsuit. Mr. Grubbs (sic) opinions are set forth in his deposition and his report.

testimony.[3] Clark argues that because of this alleged failure to respond or supplement, its motion to exclude Grubbs' testimony should have been granted.

Among other things, a party may obtain discovery of the identity and location of expert witnesses who may be called by another party to testify at trial, and the facts, mental impressions, and opinions of such experts. TEX.R.CIV.P. 166b(2)(e)(1). If the subject matter of such an expert witness' testimony has not been previously disclosed in response to an appropriate discovery request, the response must be supplemented to include the substance of the expert's expected testimony. TEX.R.CIV.P. 166b(6)(b).

 In a multi-party case, in order to avoid redundant interrogatories and answers being served among the parties, a party may generally rely on an adversary's answers to another party's interrogatories, even if the requesting party is nonsuited. *See Ticor Title Ins. Co. v. J.H. Lacy,* 803 S.W.2d 265, 266 (Tex.1991). Similarly, a party's response to an adversary's interrogatory is considered responsive to similar interrogatories from all other parties. *See Ward v. O'Connor,* 816 S.W.2d 446, 447 (Tex.App.—San Antonio 1991, no writ).[4]

 A party who fails to respond or supplement his response to a discovery request is not entitled to present evidence which he was under a duty to provide or to offer the testimony of an expert witness unless the trial court finds good cause sufficient to require admission. TEX.R.CIV.P. 215(5).[5] However, Rule 215 does not mandate exclusion of the entire testimony of an expert who is objected to on grounds other than a failure to identify. *Smith v. O'Neal,* 850 S.W.2d 797, 799 (Tex.App.—Houston [14th Dist.] 1993, no writ). The rationale for excluding an unidentified witness' testimony, despite lack of surprise, unfairness or ambush, is to assure that, in preparing for trial, a party can rely on no unidentified witnesses being called to testify. *Sharp v. Broadway Nat'l Bank,* 784 S.W.2d 669, 671 (Tex.1990). Where a witness is properly identified, this rationale for total exclusion does not exist, and the issue becomes whether his testimony should be limited because of an inadequate discovery response or supplementation. *See Melendez v. State,* 902 S.W.2d 132, 136 (Tex. App.—Houston [1st Dist.] 1995, no writ).

 In this case, since Grubbs was properly *identified* in Pitner's interrogatory answers, total *exclusion* of his testimony, as requested by Clark, was not dictated, and the trial court's decision to allow him to testify in response to such a request was not an abuse of discretion. Since Clark did not seek to *limit* Grubbs' testimony, that issue is not presented for our review. Accordingly, we overrule Clark's first point of error.

### Exclusion of Expert Testimony

In its second point of error, Clark complains that expert witness (and corporate

---

3. Southline's interrogatory asked:
 Please state the name and addresses of any expert witnesses who will be called to testify in the trial of this cause and the *substance* of such witnesses' testimony.
 (emphasis added). Pitner answered:
 Thomas Grubbs may testify as to the design, marketing, operation and warranty aspects of the forklift made the basis of this lawsuit.

4. *See also Remington Arms Co., Inc. v. Canales,* 837 S.W.2d 624, 626 (Tex.1992) (finding good cause as to late filing of objections to discovery requests where identical requests served by the same counsel were timely answered in another lawsuit); *Smith v. Southwest Feed Yards,* 835 S.W.2d 89, 91 (Tex.1992) (finding good cause as to failure to identify party as a person with knowledge where such knowledge was plainly indicated by the party's response to another interrogatory).

5. If a trial court determines that a party has failed to answer or supplement where required by Rule 166b(6)(b), Rule 215(5) mandates exclusion of the evidence unless the trial court finds good cause. *Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 914 (Tex.1992). The purpose of Rule 215(5) is to require complete responses to discovery so as to promote responsible assessment of settlement and prevent trial by ambush. *Id.* The good cause exception permits a trial court to excuse a failure to comply with discovery in difficult or impossible situations. *Id.* The trial court has discretion to determine whether the offering party has met its burden to show good cause, but it has no discretion to admit testimony excluded by the rule if good cause is not shown. *Id.*

representative) Charles Barnes was not allowed to testify that Pitner's accident could have been caused by a relief valve which could have malfunctioned due to improper maintenance. Pitner objected to this testimony on the ground that Barnes had testified there was no evidence the relief valve had malfunctioned, and her objection was sustained. In Clark's offer of proof, Barnes testified that the engine stall could have been caused either by: (1) the engine not operating at sufficient torque, or (2) a pressure relief valve in the hydraulic system not relieving sufficient pressure. Without asking Barnes whether there was any evidence that the relief valve on this forklift was not relieving an adequate amount of pressure, Clark's counsel asked what would cause such a condition. Barnes responded that a relief valve might fail due to wear, contamination or misuse. When asked whether he had seen the maintenance records of the forklift, and if so, whether they showed that the valve was maintained in accordance with the operator's manual, Barnes responded that he had seen the records and there was no evidence that a routine inspection had been conducted.

■ The admission and exclusion of evidence is committed to the trial court's sound discretion. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). A trial court abuses its discretion when it acts without regard to any guiding rules or principles. *Id.* at 754. A person seeking to reverse a judgment based on evidentiary error need not prove that, but for the error, a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment. *Id.* at 753. A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *Id.* at 753–54. Whether a case turns on excluded

evidence is determined by reviewing the entire record. *Id.* at 754.

■ A trial court has considerable latitude in determining whether hypothetical questions posed to an expert witness are based upon a fair assumption of facts. *Crawford v. Deets,* 828 S.W.2d 795, 799 (Tex.App.—Fort Worth 1992, writ denied). However, hypothetical questions should be restricted to facts in evidence. *Id.*

■ In this case, Barnes' hypothetical conclusion that a relief valve could malfunction because of improper maintenance was only relevant to the extent there was evidence that the valve in question had, in fact, malfunctioned. Despite the trial judge repeatedly stating that he would not admit Barnes' hypothetical conclusions without some evidence that the valve had failed, and asking Clark's counsel whether he had any such evidence, Clark presented no evidence that the relief valve malfunctioned or that it was improperly maintained.[6] Because the necessary factual foundation for Barnes' hypothetical conclusions was not offered, the trial court did not abuse its discretion by excluding that evidence. Clark's second point of error is overruled.

### Psychiatric Evidence

■ In its third point of error, Clark complains of the trial court's exclusion of evidence of Pitner's psychiatric history. Prior to the accident, Pitner allegedly received treatment for several years for substance or alcohol abuse and attempted suicide, and was hospitalized for mental illness. Contending that Pitner's mental anguish and loss of earnings were related to those pre-existing conditions rather than the accident, Clark offered evidence of Pitner's psychiatric history. Pitner objected on the grounds that (1) her past mental condition was not relevant because she asserted no mental injury that exceeded

---

**6.** On the contrary, Barnes admitted that no such evidence existed:

Q: Do you have any indication that the relief valve malfunctioned on June 10 of 1988, when Becky Pitner was injured?

A: No....

Q: Mr. Barnes, as the Clark corporate representative, you have testified, have you not, that

you have no evidence this relief valve operated in any manner other than designed? Is that correct?

A: I have no knowledge of it operating other than as designed.

Q: All right. So you have no evidence, do you?

A: That's correct.

the common emotional reaction to her physical injury, and, alternatively, (2) any possible relevance of her psychiatric history was outweighed by unfair prejudice.[7] After the trial court sustained this objection, Clark made an offer of proof.

As stated above, a person seeking to reverse a judgment based on evidentiary error must show that the error probably resulted in an improper judgment, *i.e.*, that, considering the entire record, the judgment turns on the particular evidence excluded or admitted. *City of Brownsville*, 897 S.W.2d at 753–54; *see also* TEX.R.APP.P. 81(b)(1). In this case, even if exclusion of the psychiatric evidence was error, which we do not decide, Clark made no showing of harm other than to say that "the excluded evidence went to the heart of the testimony and credibility of both Pitner and her expert." In addition, the damage question submitted to the jury combined the elements of loss of earning capacity, physical pain and mental anguish, disfigurement, and physical impairment in a single

amount.[8] Moreover, it does not appear that Pitner's counsel requested damages for mental anguish apart from physical pain in his jury argument,[9] and the amounts awarded by the jury were well below the total amounts requested by Pitner's counsel for the damage elements excluding mental anguish. Under these circumstances, any assessment of whether the jury actually awarded any damages for mental anguish would be purely speculative. Thus, Clark has not sustained its burden to establish that any error from exclusion of the psychiatric evidence probably resulted in an improper judgment. Accordingly, we overrule Clark's third point of error.

### Improper Argument

▮▮▮▮▮ In its fourth point of error, Clark contends that Pitner's counsel engaged in incurable and prejudicial jury argument in the following exchange:

[PITNER'S COUNSEL]: What kind of message do you want to send? Do you

---

7. Although Pitner originally sought recovery for psychiatric and psychological counseling, she withdrew these claims before Clark offered evidence of her psychiatric history. Nor did she offer psychiatric or psychological evidence in support of her claim for mental anguish.

8. Question 7 of the jury charge and the jury's answer thereto provided:

What sum of money, if paid now in cash, would fairly and reasonably compensate REBECCA ANN PITNER for her damages, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Do not reduce the amounts, if any, in your answers because of the negligence, if any, of REBECCA ANN PITNER.

Answer in Dollars and Cents for damages, if any, that were sustained in the past and that in reasonable probability will be sustained in the future.

1. Medical care (past): $135,742.13

2. Medical care (future): $100,000.00

3. Loss of earning capacity, physical pain and mental anguish, disfigurement, physical impairment (past): $150,000.00

4. Loss of earning capacity, physical pain and mental anguish, disfigurement, physical impairment (future): $ 87,500.00

9. In jury argument concerning question 7, Pitner's counsel requested $135,742.13 for past medical care, $100,000 for future medical care, $125,000 for past earning capacity, $100,000 for past disfigurement, $50,000 for past impairment, $525,000 for future earning capacity, $1,000,000 for future disfigurement, and $100,000 for future impairment. For past pain and anguish, he argued as follows:

Let's go to pain and anguish. If you go to the dentist and you're going to have some work done on your tooth, you're going to pay $20 for 30 minutes of relief from that pain for your novocaine, and so if you say—that's $40 an hour. If you say over the last five years she's averaged five hours of pain a day, if you calculated that out $40 an hour five hours a day for five years, that's $365,000 for the last five years. Look at the pictures. Look at the medical records, all the entries about pain.

For future pain and anguish, he argued the following:

Pain and anguish again $40 an hour times one hour a day for the rest of her life is $537,000. Now if she has five hours of pain today and two tomorrow and none the next day because of her activities, we figure that will average out.

We found no other reference to mental anguish in his argument concerning the damage issue.

want to say this is an acceptable product? In light of all of the engineering information, this is acceptable? "It's okay for this to happen and for you not to warn of it"? It's okay?

I don't think that's the message that we want to send. We want to say, "If you're going to distribute your product to the people of this community, you're going to do it in line with good engineering principles. You're going to recognize the risks that everybody else recognizes and they have alternatives for or you're going to have to pay for it. We're not going to allow you to make that kind of decision. We're not going to allow you to affect our people that way."

A jury did it to Ford in the Pinto cases—

[CLARK'S COUNSEL]: Objection, Your Honor.

[PITNER'S COUNSEL]:—and now juries are doing it—

[CLARK'S COUNSEL]: Objection.

[PITNER'S COUNSEL]:—to GMC.

THE COURT: Sustained. The jury will disregard counsel's remarks about other lawsuits.

In order to show that jury argument is incurable, the complainant must prove (1) an improper argument was made, (2) that was not invited or provoked, (3) that was not curable by an instruction, prompt withdrawal of the statement, or reprimand by the court, and (4) that by its nature, degree, and extent, constituted reversibly harmful error based on an examination of the entire record to determine the argument's probable effect on

a material finding. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839–40 (Tex.1979). How long the argument continued, whether it was repeated or abandoned and whether there was cumulative error are proper inquiries. *Id.* at 839–40. The complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on proper proceedings and evidence. *Id.* at 840. Where argument is incurable, no objection is necessary to preserve error. *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 333 (Tex.1968).

 In this case, Pitner's statement regarding the Pinto cases was improper argument that was not invited or provoked. However, Clark has not set forth how this statement was harmful. It was a single sentence and was not repeated. The jury found that Clark did not act knowingly and awarded Pitner roughly $473,000 of the $3 million she requested for actual damages. No exemplary damages were requested. Nor do we find any other indication in the record that this argument had a probable effect on any material finding in the verdict or that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on proper proceedings and evidence. Accordingly, we overrule Clark's fourth point of error.

### Marketing Defect

In its fifth point of error, Clark contends there was no evidence or, in the alternative, insufficient evidence to support the jury's finding of a marketing defect.[10] In particu-

---

**10.** Question 2 of the jury charge and the jury's answer thereto provided:

Was there a defect in the marketing of the CLARK forklift at the time it left the possession of CLARK EQUIPMENT COMPANY that was a producing cause of the occurrence in question? A "marketing defect" with respect to the product means the failure to give adequate warnings of the product's dangers that were known or by the application of reasonably developed human skill and foresight should have been known or failure to give adequate instructions to avoid such dangers, which failure rendered the product unreasonably dangerous as marketed.

"Adequate" warnings and instructions means warnings and instructions given in a form that

could reasonably be expected to catch the attention of a reasonably prudent person in the circumstances of the product's use; and the content of the warnings and instructions must be comprehensible to the average user and must convey a fair indication of the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent person.

An "unreasonably dangerous" product is one that is dangerous to an extent beyond that which would be contemplated by the ordinary user of the product with the ordinary knowledge common to the community as to the product's characteristics.

ANSWER "YES" OR "NO."

ANSWER: *YES*

*See* 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 71.06 (1990).

lar, Clark challenges the sufficiency of the evidence of foreseeability, *i.e.*, that it actually knew or reasonably should have known of the risk of harm of the forklift at the time it was marketed.

When reviewing a challenge to the *legal* sufficiency of evidence, *i.e.*, a "no evidence" point of error, a reviewing court may consider only the evidence and inferences that tend to support the challenged findings and should disregard all evidence and inferences to the contrary. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995). A jury's finding will be upheld if more than a scintilla of evidence supports it. *Id.* More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*

When reviewing an attack on the *factual* sufficiency of evidence, we must weigh all of the evidence in the record, and may overturn findings only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996). The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. TEX.R.CIV.P. 226a(III); *Jaffe Aircraft Corp. v. Carr*, 867 S.W.2d 27, 28 (Tex.1993). Although we may review factual sufficiency, we may not set aside a finding merely because we would have reached a different result. *Id.*

A product may be unreasonably dangerous because of a defect in design, manufacturing, or marketing. *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex.1995).[11] A marketing defect occurs when a defendant knows or should know of a potential risk of harm presented by the product but markets it without adequately warning of the danger or providing instructions for safe use. *Bristol–Myers Co. v. Gonzales*, 561 S.W.2d 801, 804 (Tex.1978).

Foreseeability is measured in terms of those dangers which are reasonable to anticipate, and the product supplier is held to the status of an expert and is assumed to possess knowledge of the latest scientific advances. *See USX Corp. v. Salinas*, 818 S.W.2d 473, 484 (Tex.App.—San Antonio, 1991, writ denied). A claimant may prove that a product supplier's knowledge or the foreseeability of the risk of harm to product users through, among other things, (1) evidence of similar accidents or other complaints, (2) presentation of post-accident warnings, (3) presentation of recall letters, (4) evidence of governmental standards, (5) expert testimony, lay testimony, or documentary evidence to show information about risks available to a defendant, and (6) reliance on evidentiary presumptions. *Id.*

In this case, Pitner claimed that the marketing defect of the forklift was the lack of warnings to the effect that (1) the engine might die if the forks were tilted all the way forward or back, and (2) if the engine died, steering and braking would become more difficult. Clark argues that there was no evidence that Clark knew or could reasonably foresee this alleged risk at the time the product was marketed in 1978."[12]

According to the statement of facts, Charles Barnes was an engineer who retired from Clark as a chief product engineer after 30 years there, and who had worked on the design of the brakes and steering for the type of forklift involved in Pitner's accident. He testified, among other things, that the

---

**11.** A manufacturing defect exists when a product does not conform to the design standards and blueprints of the manufacturer and the flaw makes the product more dangerous and therefore unfit for intended or reasonably foreseeable uses. A product with a design defect complies with all design specifications, but the design configuration is unreasonably dangerous in that the risks of harm associated with its intended and reasonably foreseeable uses outweigh its utility. *USX Corp. v. Salinas*, 818 S.W.2d 473, 482 n. 8 (Tex.App.—San Antonio 1991, writ denied).

In this case, the jury was submitted questions on design defect and marketing defect, but not manufacturing defect. It returned a negative finding on design defect and an affirmative finding on marketing defect.

**12.** Clark argues only that Pitner's evidence was insufficient, and cites no affirmative evidence that it lacked actual or constructive knowledge of the risk.

forklift in issue was manufactured by Clark in late 1978. He explained how tilting the forks all the way can cause the engine to stall and that the power-assisted steering and brakes on the forklift operate only when the engine is running. When the engine is not running, the forklift has only ordinary hydraulic steering and brakes which are fully effective but require more force to use than when power-assisted. Barnes further stated that, on slopes, Clark recommends that the forklift be driven with the load on the uphill side to prevent the load from falling off or the forklift from tipping over.

These facts were undisputed, and Barnes' testimony reflects an awareness by Clark that forklifts are sometimes driven on slopes, that tilting the forks all the way, i.e., to level a load on a slope, can cause the engine to die, and that when the engine is not running, the steering and brakes become more difficult to use. Pitner argued, and the jury apparently agreed, that the failure to warn of these conditions rendered the forklift unreasonably dangerous. Because these considerations are fundamental to the design of the forklift, and in the absence of any indication in the evidence to the contrary, it can fairly be inferred that Barnes,' and thus Clark's, knowledge of these conditions also existed when the forklift was manufactured. Therefore, this evidence was legally and factually sufficient to show Clark's knowledge of the facts which Pitner claims constituted a marketing defect. Accordingly, Clark's fifth point of error is overruled.

## Consumer Status

In its sixth point of error, Clark contends there was no evidence or, in the alternative, insufficient evidence to support the finding that Pitner was a consumer under the DTPA.

■■■ To maintain a private action under the DTPA, a plaintiff must be a consumer. TEX.BUS & COM.CODE ANN. § 17.50(a) (Vernon Supp.1996); *Eckman v. Centennial Sav. Bank*, 784 S.W.2d 672, 674 (Tex.1990).[13] A consumer is defined as "an individual ... who seeks or acquires by purchase or lease, any goods or services...." TEX.BUS & COM. CODE ANN. § 17.45(4) (Vernon 1987). Therefore, in order to be a consumer, a party must have sought or acquired goods or services by purchase or lease, and the goods or services purchased or leased must form the basis of the DTPA complaint. *Sherman Simon Enter., Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 15 (Tex.1987).[14] A plaintiff establishes his standing as a consumer by his relationship to the transaction, not by a contractual relationship with the defendant. *Kennedy v. Sale*, 689 S.W.2d 890, 893 (Tex.1985).

■■■ Privity between the plaintiff and defendant is not a consideration in deciding the plaintiff's consumer status under the DTPA. *Id.* at 892–93. Thus, although the term "consumer" includes one who acquires goods or services by purchase or lease, the plaintiff need not himself be the one who purchases or leases the goods or services in order to be a consumer. *Id.* at 892 (holding that even though employee did not "seek" group medical insurance coverage which had been negotiated by his employer, he did "acquire" those benefits when he was covered by the policy's provisions); *see also Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 368 (Tex.1987) (holding that even though infant did not herself contract for

---

**13.** The DTPA does not require a claimant to use the word "consumer" to describe himself in his pleadings, but only to allege facts showing that he fits within that definition. *Lara v. Lile*, 828 S.W.2d 536, 541 (Tex.App.—Corpus Christi 1992, writ denied); *First Title Co. of Corpus Christi, Inc. v. Cook*, 625 S.W.2d 814, 817 (Tex.Civ. App.—Fort Worth 1981, writ dism'd).

**14.** In this case, the DTPA violation submitted to the jury was for breach of warranty, presumably implied. *See* TEX.BUS. & COM CODE ANN. § 17.50(a)(2) (Vernon Supp.1996). However, the DTPA does not create any warranties; they must be established independently in order to be

actionable under the DTPA. *La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 565 (Tex. 1984). In a Uniform Commercial Code implied warranty action for personal injuries, privity of contract is not a requirement. *Garcia v. Texas Instruments, Inc.*, 610 S.W.2d 456, 465 (Tex. 1980). Thus, any non-purchaser who uses or is affected by a product may arguably assert a claim for breach of UCC implied warranty, regardless of his relationship to the purchase transaction. *See id.* at 463–65. However, because of the consumer requirement, such a warranty claim might not also be actionable under the DTPA.

medical treatment provided to her by the hospital, the hospital nevertheless sold its goods and services and she "acquired" them for purposes of the DTPA).

■ However, in order for an employee to "acquire" goods or services purchased or leased by his employer, the employee must establish that the employer's primary purpose for purchasing or leasing the goods or services was to benefit the employee. *See Kitchener v. T.C. Trailers, Inc.*, 715 F.Supp. 798, 801 (S.D.Tex.1988); *Brandon v. American Sterilizer Co.*, 880 S.W.2d 488, 492 (Tex. App.—Austin 1994, no writ); *Lara v. Lile*, 828 S.W.2d 536, 542 (Tex.App.—Corpus Christi 1992, writ denied). If the employer's purchase or lease of the goods or services is primarily for the benefit of the employer's business and benefits the employee only incidentally, the employee does not acquire those goods or services to qualify as a consumer. *See Lara*, 828 S.W.2d at 542.[15]

■ In this case, Pitner argues that she "acquired" the forklift because Hughes purchased it for the use of its employees in the shipping and receiving department, and Pitner frequently worked with, and thus benefitted from, the forklift as an employee in that department. However, we have found no evidence that the forklift was purchased by Hughes for the personal or individual benefit of Pitner, or for any purpose other than the ordinary operation of its business. Because the use and benefit of the forklift extended to Pitner only incidentally, she did not "acquire" it, and, thus, did not qualify as a consumer with respect to it for purposes of the DTPA. Accordingly, we sustain Clark's sixth point of error, and modify the judgment to delete the award of treble damages, legal fees and costs made pursuant to the DTPA.[16]

### Breach of Implied Warranty of Merchantability

In its seventh point of error, Clark contends there was no evidence or, in the alternative, insufficient evidence to support the jury's finding of a breach of the implied warranty of merchantability. However, question four of the jury charge which submitted the issue of implied warranty of merchantability was answered "No" by the jury.[17] Without an adverse ruling or finding in the trial court, this point presents nothing for appellate review. Therefore, point of error seven is overruled.

Accordingly, the portion of the judgment awarding treble damages, legal fees and costs pursuant to the DTPA is reversed and modified to exclude such amounts from the

---

15. *Compare Lewis & Lambert Metal Contractors v. Jackson*, 914 S.W.2d 584, 587–88 (Tex.App.—Dallas 1994, writ granted) (holding that employees acquired repairs to employer's ventilation system by requesting the repairs and then relying on the defendant's representations that system was repaired and safe).

16. Pursuant to Section 17.50(b)(1), as it existed at the time of trial, the trial court awarded additional damages of two times the amount of actual damages that did not exceed $1,000. *See* Act of May 10, 1973, 63rd Leg., R.S., ch. 143, § 1, 1973 Tex.Gen.Laws 322, *amended by* Act of May 6, 1977, 65th Leg., R.S., ch. 216, § 5, 1977 Tex.Gen. Laws 603; Act of May 11, 1979, 66th Leg., R.S., ch. 603, § 4, 1979 Tex.Gen Laws 1329 (amended 1989 and 1995) (current version at Tex.Bus & Com.Code Ann. § 17.50(b)(1) (Vernon Supp. 1996)). Additionally, the trial court awarded legal fees and costs pursuant to Section 17.50(d). *See* Tex.Bus & Com.Code Ann. § 17.50(d).

17. Question 4 and the jury's answer thereto provided:
 Was the CLARK forklift supplied by CLARK EQUIPMENT COMPANY unfit for the ordinary purposes for which such forklifts are used because of a defect and, if so, was such unfit condition a proximate cause of the occurrence in question?
 A "defect" means a condition of the goods that renders them unfit for the ordinary purposes for which they are used because of a lack of something necessary for adequacy.
 ANSWER "YES" or "NO."
 ANSWER: *NO*
 This question tracks the form prescribed in the Texas Pattern Jury Charge for breach of implied warranty of merchantability under Section 2.314(b)(3) of the Texas Uniform Commercial Code. *See* 3 State Bar of Texas, Texas Pattern Jury Charges PJC 71.08 (1990). By contrast, the other liability questions, jury questions 1–3, tracked the forms prescribed for design and marketing defects under strict liability and for breach of warranty under Section 17.50(a)(2) of the Texas Business and Commerce Code, respectively. *See* 3 State Bar of Texas, Texas Pattern Jury Charges PJC 71.05, 71.06 (1990); 4 State Bar of Texas, Texas Pattern Jury Charges PJC 102.08 (1990).

total damages. As thus modified, the judgment of the trial court is affirmed.