Evelyn PACE, Individually and as Representative of the Estate of Marion Pace, Deceased, Appellant,

v.

David L. SADLER, M.D., and Good Shepherd Medical Center, Appellees.

No. 04–96–00399–CV.

Court of Appeals of Texas, San Antonio.

March 18, 1998.

*Club,* 737 S.W.2d 366, 369 (Tex.App.—Houston [14th Dist.] 1987, no writ).

Tom Needham, Needham, Johnson, Lovelace & Johnson, P.C., Dallas, for Appellant.

J. Kevin Oncken, Brin & Brin, P.C., George F. Evans, Jr., Ruth Greenfield Malinas, Lisa Rocheleau, Ball & Weed, P.C., San Antonio, for Appellee.

Before RICKHOFF, LÓPEZ and ANGELINI, JJ.

## OPINION

LÓPEZ, Justice.

This appeal arises from a medical malpractice lawsuit filed by Evelyn Pace. In her lawsuit, Mrs. Pace sued Dr. David Sadler and Good Shepherd Medical Center (Medical Center) for negligence she contends resulted in her husband's death. Dr. Sadler performed peripheral vascular surgery on Mr. Pace at Good Shepherd Medical Center. Mr. Pace died two days after the surgery as the result of a heart attack. A jury, however, did not find that Mr. Pace's death resulted from negligence on the part of Dr. Sadler or the Medical Center. In her appeal, Mrs. Pace raises four issues to challenge the propriety of the admission, exclusion, and restriction of the use of evidence at trial.

### Testimony Concerning the Nurses' Flow Sheet

The gist of Mrs. Pace's first point of error is that the trial court's rulings prevented her from responding to the defendants' misrepresentations about her husband's medical records. Mrs. Pace proffered the Medical Center's records for her husband's care as Plaintiff's Exhibit 2. The medical records included a multi-purpose flow sheet which reflects a one-hour period of time during which nurses made no entries. Mrs. Pace wanted to use this gap to challenge the adequacy of Medical Center's treatment of her husband. The trial court admitted the medical records, but excluded comments which would characterize the gap in the reporting as inadequate documentation.

Mrs. Pace contends that this exclusion was error because she testified at trial that her husband was experiencing classic symptoms of a heart attack shortly before his death and that she reported the same to the nurses on duty. If the jury believed the gap in charting indicated that the nurses had not documented everything about Mr. Pace's condition, Mrs. Pace argues that the jury may have believed that the nurses did not report everything to Dr. Sadler and had they reported everything, Dr. Sadler should have known that Mr. Pace was suffering a heart attack. Mrs. Pace contends that the exclu-sion of comments about the gap resulted in a false and distorted picture of the medical records. While the defendants were permitted to repeatedly vouch for the completeness and accuracy of the hospital's records, Mrs Pace complains that she was not permitted to show how the gap was relevant to what was known by Medical Center's nurses at the time Mr. Pace died.

In response, the appellees, Dr. Sadler and the Medical Center, argue that the trial court properly excluded comments about the gap because the gap was never shown to be relevant to an issue in dispute. The appellees maintain that comments about the gap were irrelevant because no evidence existed indicating that any failure to write down charting information equated to a failure to monitor Mr. Pace or a failure to report important observations about his condition to Dr. Sadler. Even if relevant, the appellees argue, the probative value of such comments were outweighed by the danger of unfair prejudice to the defendants, confusion of the issues, and the potential for misleading the jury.

The decision to admit evidence is within the sound discretion of the trial court. *See Ginsberg v. Fifth Court of Appeals,* 686 S.W.2d 105, 108 (Tex.1985). Accordingly, a point of error contesting the exclusion of evidence is reviewed using an abuse of discretion standard. To obtain a reversal on an evidentiary point of error, the trial court's error must have amounted to such a denial of the rights of the appellant as was reasonably calculated to cause the rendition of an improper judgment. *See* TEX.R.APP. P. 44.1(a). To make this determination, the appellate court must review the entire record. *See McCraw v. Maris,* 828 S.W.2d 756, 758 (Tex. 1992) (stating proper standard of review where appellant complains about exclusion of evidence).

The threshold issue in the admission of evidence is relevancy. *See* TEX.R. CIV. EVID. 402. In order for Mrs. Pace to be permitted to comment prejudicially about the gap, such comment would have to have been relevant. *Id.* To be relevant, the gap was required to make a fact of consequence more or less probable. *Id.* R. 401. Here, the

disputed issue was whether Mr. Pace exhibited signs of a heart attack in the hours preceding his death.[1] If Mr. Pace exhibited such symptoms, and the nurses failed to report them to Dr. Sadler, the defendants would have breached the standard of care. Mrs. Pace testified that Mr. Pace complained of chest pain and pain in his left arm around 7:00 p.m. on the evening prior to his death. She testified further that he was perspiring around his eyes and that he was very pale in color. As a result, Mrs. Pace stated that she called for assistance and that a nurse responded. But the gap in the flow sheet occurred between 10:10 and 11:12 p.m. After reviewing the record, we do not see how the absence of an entry on the flow sheet could make it more probable that Mr. Pace experienced the symptoms that Mrs. Pace described. Instead, the absence of an entry during the one hour gap would seem to make it less probable that Mr. Pace exhibited symptoms of a heart attack. If relevant, the gap was relevant only from the defendants' perspective. Under these circumstances, we conclude that the trial judge did not abuse its discretion in excluding testimony which would have characterized the gap as inadequate care. We overrule Mrs. Pace's first point of error.

### Testimony About the Discovery of the EKG Strip

As her second point of error, Mrs. Pace complains that she was not permitted to present evidence that the defendants had spoliated critical evidence. Specifically, Mrs. Pace sought to present evidence about the discovery of an EKG strip. Mrs. Pace is referring to the results of an EKG that was performed on Mr. Pace approximately 30 minutes prior to his death. Although the original strip was not contained in the Medical Center's records, Mrs. Pace discovered a duplicate strip which was mailed to Dr. Sadler and placed in his office records. At trial, the defendants sought to exclude references to the absence of the strip from the hospital's

records on the grounds that the absence of the strip was completely irrelevant to the issues in the case, and that any inquiry into the matter would only confuse, inflame, and improperly prejudice the jury. The exclusion, Mrs. Pace contends, constitutes reversible error because her primary allegation of negligence was based on the defendants' failure to timely perform an EKG on Mr. Pace. Because Mrs. Pace was prevented from commenting on how she discovered the results of the EKG, she contends that the credibility of the defendants was left unquestioned in the minds of the jury.

■ In response, the appellees argue that references to the absence of the strip from the Medical Center's records were properly excluded because (1) the evidence was not destroyed, and (2) evidence of the EKG was admitted into evidence. Because evidence of the EKG was before the jury, the appellees argue that comment about the strip's absence from the Medical Center's records would have been cumulative. We agree with the appellees.

The record contains substantial testimony about the disputed EKG. Dr. Sadler was examined and cross-examined extensively about the test. Likewise, Mrs. Pace's medical expert was examined and cross-examined at length about the EKG. This testimony established that Mr. Pace suffered a heart attack, and that the plaintiff and the defendants disagreed about whether an EKG should have been ordered earlier. Thus, the jury was aware of Mrs. Pace's contention that the nurses attending Mr. Pace and Dr. Sadler should have known that Mr. Pace suffered a heart attack, and that they failed to respond to Mr. Pace's symptoms. However, no evidence exists in the record to suggest that the hospital's copy of the EKG strip was destroyed. Even if it was destroyed, both the EKG strip and testimony interpreting the results of the test were presented to the jury for consideration. Like additional comment about the gap in the flow sheet,

---

1. The existence of the gap is not disputed. Mrs. Pace established the existence of the one-hour gap through the testimony of her nursing expert. The flow sheet itself was presented to the jury in two forms—as part of Mr. Pace's medical records

and as a separate exhibit. If the jury considered the gap significant, it had the documents necessary to make a comparison. The trial court excluded only prejudicial comments about the gap.

additional comment about how Mrs. Pace discovered the EKG strip in Dr. Sadler's records was irrelevant to the issue in dispute—whether Mr. Pace experienced symptoms of a heart attack in the hours prior to his death. Additional comment about how Mrs. Pace discovered the EKG strip would have only served to unfairly prejudice Dr. Sadler and the hospital. As a result, the trial court properly excluded comments about the discovery of the EKG strip. We overrule Mrs. Pace's second point of error.

### Expert Testimony by Dr. Sadler

In her third point of error, Mrs. Pace contends that the trial court erred in allowing Dr. Sadler to testify as an expert. Mrs. Pace maintains that Dr. Sadler and the Medical Center did not disclose the substance of Dr. Sadler's testimony in response to her interrogatory asking for information about the defendants' expert witnesses. Without disclosure, Mrs. Pace complains that she did not have an opportunity to analyze Dr. Sadler's specific opinions. As a result, she argues, the trial court should not have permitted Dr. Sadler to testify about applicable standards of care, negligence, causation and damages. In response, the appellants maintain that the trial court did not err in allowing Dr. Sadler to testify about these issues because Dr. Sadler was properly identified as an expert.

After reviewing the record, we conclude that Dr. Sadler was identified as an expert and that the trial judge did not err by allowing Dr. Sadler to testify about applicable standards of care, negligence, causation and damages. In responses to Mrs. Pace's interrogatories, the Medical Center twice identified Dr. Sadler as an expert by name, address, and telephone number—first in September, 1995 and again in October, 1995. In addition, the Medical Center responded in its October supplement that the substance of Dr. Sadler's opinions could be found in Mr. Pace's medical records and in his deposition. Dr. Sadler was deposed in March, 1995. During that deposition, Mrs. Pace had an opportunity to fully examine Dr. Sadler about his opinions in regard to the applicable standards of care, negligence, causation and damages. Thus, the trial judge properly allowed Dr. Sadler to testify on behalf of the Medical Center. *Cf. Clark Equip. Co. v. Pitner*, 923 S.W.2d 117, 119 (Tex.App.—Houston [14th Dist.] 1996, writ denied) (finding that plaintiff properly identified expert where she identified witness by name, address and phone number and stated that expert's opinions were set forth in expert's deposition). The court's ruling was also proper as to Dr. Sadler. In his initial response to Mrs. Pace's interrogatories, Dr. Sadler responded that he had not then identified expert witnesses, but that he reserved the right "to elicit testimony from the witnesses identified by the Plaintiffs or other parties." Subsequently, Dr. Sadler identified himself as an expert witness by name, address, and phone number in September, 1995 and November, 1995. Although Dr. Sadler did not identify the substance of his testimony in those replies, a party in a multi-party case like this one is entitled to rely on the interrogatories and answers served on the other parties in the same suit on common causes of action. *See Ticor Title Ins. Co. v. Lacy*, 803 S.W.2d 265, 266 (Tex.1991); *Ward v. O'Connor*, 816 S.W.2d 446, 447 (Tex. App.—San Antonio 1991, no writ). Since Medical Center had identified the substance of Dr. Sadler's testimony, the trial court's ruling was proper as to Dr. Sadler. We overrule Mrs. Pace's third point of error.

### Expert Nurse Testimony

In her fourth point of error, Mrs. Pace complains that the trial court excluded opinion testimony by her nursing expert, Nurse Foster, about causation while permitting the defendants to cross-examine the nurse extensively on that issue. In response, the appellees contend that the trial court's rulings concerning the nurse's testimony were proper because the trial court allowed testimony for which Foster was shown to be qualified and only kept out that portion of her testimony that went beyond her qualifications. We agree with the appellees.

Mrs. Pace presented Foster as a nursing expert. As a nursing expert, Foster could testify about issues within her experience and training. *See* TEX.R. CIV. EVID. 702.

Mrs. Pace questioned Foster about the standard of reasonable nursing care in an effort to establish neglect on the part of the nurses attending Mr. Pace following his surgery. The trial court permitted Foster to state her opinion in regard to a nurse's responsibilities in response to Mr. Pace's symptoms: poor perfusion, oxygenation, and blood pressure. *See* 22 TEX. ADMIN. CODE § 217.11(3) (1997) (Bd. of Nurse Exam'rs, Standards of Professional Nursing Practice) (requiring nurses to make a nursing diagnosis as part of patient care). But Mrs. Pace wanted to solicit an opinion from Foster to establish that these symptoms were indicative of a heart problem; that is, a medical diagnosis about causation. Because Foster was not shown to be qualified to medically diagnose heart conditions, the court properly prohibited Foster from interpreting Mr. Pace's symptoms as indications of a heart problem. *See Lesser v. St. Elizabeth Hosp.*, 807 S.W.2d 657, 659 (Tex.App.—Beaumont 1991, writ denied) (stating that nurse might be permitted to testify about proximate causation if she is shown to have specialized experience or training that qualifies her to testify about medical causation). We overrule Mrs. Pace's complaint about the exclusion of Foster's testimony.

Having overruled each of Mrs. Pace's points of error, we affirm the judgment of the trial court.