TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-04-00824-CV






Dorothy Kincaid, Appellant


v.


Austin Center for Outpatient Surgery, L.P. d/b/a HealthSouth Surgical

Hospital of Austin, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT

NO. GN300423, HONORABLE DARLENE BYRNE, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 Appellant Dorothy Kincaid appeals from the dismissal of her medical malpractice
claim against appellee, HealthSouth Surgical Hospital of Austin ("HealthSouth"). Kincaid claims
she suffered injuries that were caused by the negligence of HealthSouth's staff in failing to instruct
her to avoid sleeping on her back after eye surgery. The district court granted HealthSouth's motion
to dismiss for failure to provide an adequate expert report under the former Texas Medical Liability
and Insurance Improvement Act. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01. (1) We hold that
the district court did not abuse its discretion and affirm the dismissal.

BACKGROUND


 On October 19 and 20, 2000, Kincaid was diagnosed with and treated for an eye
infection and retinal detachment in her left eye by Dr. M. Coleman Driver. Kincaid returned on
November 28, for a viterectomy scleral buckle, an outpatient surgery recommended by Dr. Driver
to repair the retinal detachment. Dr. Driver and his associate Dr. Jack Pierce performed the
procedure at the HealthSouth Surgical Hospital in Austin. The surgery involved injecting silicone
oil into Kincaid's left eye to help force out fluid around the retina.

 Kincaid's post-operative written orders included the doctor's instruction: "[p]osition:
anything but flat on back." Kincaid alleges she did not receive this instruction from HealthSouth's
staff either orally or in writing on the day of the surgery. She was discharged from the hospital that
same day and stayed at a hotel in Austin. After sleeping on her back that night, Kincaid awoke the
next morning with pain and impaired vision in her left eye. Kincaid returned to Dr. Driver's office
that morning. He found that the silicone oil had migrated to the front part of her eye, causing
increased intraocular pressure. To avoid potential damage to the eye nerve from the pressure, Dr.
Driver began removing the silicone oil at the clinic but had to finish the procedure later that day in
an operating room. Dr. Driver testified that he normally would have waited six months before
removing the oil.

 Kincaid filed suit against HealthSouth on February 10, 2003. She alleges that
HealthSouth was negligent in failing to instruct her upon discharge to avoid sleeping on her back,
as written in the post-operative orders. Kincaid claims the omission caused the elevated pressure,
which required additional surgery in Dr. Driver's clinic on November 29, and other subsequent
surgeries to save her eye. Ultimately, Kincaid contends she lost vision in her left eye and will soon
have it removed because of HealthSouth's alleged negligence. 

 As required by article 4590i, Kincaid filed an expert medical report with the expert's
curriculum vitae attached. See Tex. Rev. Civ. Stat. Ann. art. 4950i, § 13.01(d). In the report, Kathy
Lunday, R.N., the designated expert, writes, in part:


It is clear from the record that the complications from the surgery on the 28th stem
directly from the discharge nurse not communicating to the patient that she should
avoid lying on her back. The RN is the patient's advocate and this especially holds
true when the patient has had a surgical procedure and needs written instructions. It
is quite clear that the nurse taking care of Mrs. Kincaid failed to transfer Dr. Pierce's
written post op order for the patient to follow at home. This omitted instruction falls
below the standard of care expected of nurses in similar situations, and the failure to
meet the standard of care caused Mrs. Kincaid to engage in an activity which
increased the intraocular pressure, the need for the subsequent next day surgery and
Mrs. Kincaid's poor outcome. 



 HealthSouth filed a motion to dismiss for failure to provide an adequate 4590i expert
report. In the motion, HealthSouth asserted that Lunday was not qualified to render an expert
opinion as to medical causation. Alternatively, HealthSouth insisted that the report was conclusory
and deficient as a matter of law. The district court granted the motion, dismissing Kincaid's claim
with prejudice and awarding reasonable attorney's fees and court costs to HealthSouth. See id.
§ 13.01(e). Kincaid brings this appeal.


DISCUSSION


 In her first issue, Kincaid argues that the district court erred in granting the motion
to dismiss based on Lunday's qualifications. In her second issue, Kincaid argues that the expert
report addressed all required elements under section 13.01(r)(6), or alternatively, that Lunday
addressed causation by incorporating HealthSouth's medical records in her report. We review the
district court's dismissal of Kincaid's claim under an abuse-of-discretion standard. See Bowie Mem'l
Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam) (citing American Transitional Care
Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001). A district court abuses its discretion
if it acts arbitrarily or unreasonably without regard to guiding rules and principles. Id. When
reviewing a matter committed to the district court's discretion, we may not substitute our own
judgment for the district court's judgment. Id.

 Within 180 days of filing suit, a medical malpractice plaintiff must provide each
defendant physician or health-care provider with an expert report and the expert's curriculum vitae,
or voluntarily nonsuit the action. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d). The "expert"
in a suit against a defendant physician is defined as a physician who meets the requirements of
section 14.01(a). Id. § 13.01(r)(5)(A). In a suit against a "nonphysician health care provider," the
report must be given by "an expert who has knowledge of accepted standards of care for the
diagnosis, care, or treatment of the illness, injury, or condition involved in the claim." Id.
§ 13.01(r)(5)(B).

 A nursing expert may discuss issues within that expert's training and experience, such
as the reasonable standard of nursing care. See Pace v. Sadler, 966 S.W.2d 685, 689 (Tex.
App.--San Antonio 1998, no pet.); see also Tex. R. Evid. 702. However, a licensed, registered
nurse is prohibited from "acts of medical diagnosis" and thus cannot testify to subjects that would
require a medical diagnosis. Costello v. Christus Santa Rosa Health Care Corp., 141 S.W.3d 245,
248 (Tex. App.--San Antonio 2004, no pet.) (quoting Tex. Occ. Code Ann. § 301.002(2) (West
2005) (definition of "professional nursing")). An unqualified expert fails the statutory requirements
of article 4590i just as an inadequate report does; the district court has no choice but to dismiss the
case with prejudice under section 13.01(e) if that is the only expert report offered. See Tex. Rev.
Civ. Stat. Ann. art. 4590i, § 13.01(e); see also Costello, 141 S.W.3d at 249.

 An adequate expert report should provide a fair summary of the expert's opinions
regarding the applicable standards of care, the manner in which the care rendered by the physician
or health care provider failed to meet the standards, and the causal relationship between that failure
and the injury, harm or damages claimed. Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(r)(6). A
motion to dismiss for the inadequacy of the report must be granted if it appears to the court, after
hearing, that the report does not represent a good faith effort to comply with the definition of an
expert report in section 13(r)(6). Id. § 13.01(l). 

 A medical malpractice plaintiff satisfies the requirement of a good faith effort if the
expert report (1) informs the defendant of the specific conduct in question, and (2) provides a basis
for the district court to conclude that the plaintiff's claims have merit. Palacios, 46 S.W.3d at 879. 
The report does not have to marshal all the plaintiff's proof, but it does have to address each element
required under section 13.01(r)(6)--standard of care, breach, and causation. Id. at 878; Tex. Rev.
Civ. Stat. Ann. art. 4590i, § 13.01(r)(6). Because the focus of article 4590i is on the expert report's
contents, the district court should look no further than the four corners of the report. Palacios, 46
S.W.3d at 878.

 The expert report will be found inadequate if any of the elements required under
section 13.01(r)(6) are omitted or presented in a conclusory manner. Id. at 879. An expert's mere
conclusion on standard of care, breach, or causation does not satisfy the Palacios test of good faith
effort. Id. A report that addresses a section 13.01(r)(6) element by simply "provid[ing] insight" into
the plaintiff's claim is not enough to support a good faith effort. Wright, 79 S.W.3d at 53. 
Moreover, there are no "magical words" that an expert must use, such as describing causation in
terms of "reasonable medical probability," that determine the adequacy of the report. Id.

 To avoid being conclusory, "the expert must explain the basis of his statements to link
conclusions to facts." Wright, 79 S.W.3d at 52 (quoting Earle v. Ratliff, 998 S.W.2d 882, 890 (Tex.
1999)). In Wright, the plaintiff presented an expert report stating, "if the x-rays would have been
correctly read and the appropriate medical personnel acted upon those findings then Wright would
have had the possibility of the better outcome." Id. at 52-53. This statement did not constitute a good
faith effort to summarize the causal relationship between the failure to meet the applicable standard
of care and the plaintiff's injury. See id. at 53 (citing Tex. Rev. Civ. Stat. Ann. art. 4590i,
§ 13.01(r)(6)). The report was inadequate and conclusory because it did not contain any information
connecting the failure to read and act upon the x-rays with the conclusion that Wright would have
had a better outcome if not for the breach. See id. Thus, the trial court did not abuse its discretion
and was, in fact, required to dismiss the plaintiff's claims. Id. at 54 (citing Tex. Rev. Civ. Stat. Ann.
art. 4590i, § 13.01(l)).

 In her first issue, Kincaid argues that Lunday is a qualified expert because the subject
of the report is post-operative care. Kincaid claims that Lunday, as a registered nurse with extensive
nursing experience, is offering an opinion on HealthSouth's post-operative care without attempting
to give a medical diagnosis. Lunday may be qualified to give an opinion on the nursing standard of
care in this case. See Pace, 966 S.W.2d at 689. However, the issue presented in HealthSouth's
motion to dismiss is whether Lunday has the expertise to express an opinion about what medically
caused the injuries to Kincaid's eye following her first surgery. See Costello, 141 S.W.3d at 248;
see also Tex. R. Evid. 702.

 To give an opinion on the cause of the alleged injuries to Kincaid's eye following
surgery would require a medical diagnosis. See Costello, 141 S.W.3d at 248. Lunday, a registered
nurse licensed in Texas, is prohibited from "acts of diagnosis." See id. (quoting Tex. Occ. Code
Ann. § 301.002(2)). Because Lunday is unqualified to give an opinion on the medical cause of the
injury to Kincaid's eye, the expert report omits an essential element and does not constitute a good
faith effort to comply with article 4590i. Palacios, 46 S.W.3d at 879; see Tex. Rev. Civ. Stat. Ann.
art. 4590i, § 13.01(l). Therefore, the district court was required to grant HealthSouth's motion to
dismiss. See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(e), (l). Accordingly, we overrule
Kincaid's first issue.

 In her second issue, Kincaid argues that the expert report adequately addresses all
elements required under section 13.01(r)(6), including causation. Alternatively, she claims that the
report incorporated medical records that address causation. Lunday's report first addresses causation
by stating, "[i]t is clear from the record that the complications from the surgery stem directly from
the discharge nurse not communicating to the patient that she should avoid lying on her back." 
Lunday further opines that "[t]his omitted instruction falls below the standard of care expected of
nurses in similar situations, and the failure to meet the standard of care caused Mrs. Kincaid to
engage in an activity which increased the intraocular pressure, the need for subsequent day surgery
and Mrs. Kincaid's poor outcome."

 Like the statements regarding causation in Wright, Lunday's statements are
conclusory because they fail to provide sufficient information linking Kincaid's injuries (the
increased pressure, next day surgery, and poor outcome) to HealthSouth's alleged breach of omitting
the instruction. See 79 S.W.3d at 53. Lunday's report does not state how omitting the instruction
actually brought about the injuries to Kincaid's eye, nor does the report address how Kincaid's eye
condition would have progressed or been treated if the instruction had been given. See Costello, 141
S.W.3d at 248. The report does not even specify the nature of Kincaid's "poor outcome" or
"complications from surgery." Lunday merely concludes that HealthSouth's behavior caused a poor
outcome and complications from surgery.

 Without any other information connecting Lunday's conclusions to HealthSouth's
alleged breach, the report is conclusory and fails to present the causal relationship required by section
13.01(r)(6). See Wright, 79 S.W.3d at 53. Unlike the case Kincaid cites for support, the report here
does not have other items of specific and relevant information preceding the conclusory statements
on causation. See Petrus-Bradshaw v. Dulemba, 158 S.W.3d 630, 633-34 (Tex. App.--Forth Worth
2005, no pet.). Moreover, incorporation of external medical records showing causation is flatly
prohibited under the four corners rule that governs article 4590i expert reports. See Palacios, 46
S.W.3d at 878.

 Because Lunday's report is conclusory, it did not inform HealthSouth of the specific
conduct at issue or give the district court any basis to conclude that Kincaid's claim had merit. See
id. Although Kincaid only had to provide a fair summary addressing causation, the proffered report
did not satisfy the good faith effort to meet statutory requirements. Thus, the district court was
required to grant HealthSouth's motion to dismiss for failure to provide an adequate expert report. 
See Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.01(e), (l). Accordingly, we overrule Kincaid's second
issue.


CONCLUSION


 The district court properly granted HealthSouth's motion to dismiss on the basis of
either Lunday's lack of expert qualifications, or the inadequate treatment of causation in the expert
report. Accordingly, we hold that the district court did not abuse its discretion in dismissing
Kincaid's claim based on her failure to provide an adequate article 4590i expert report. The
dismissal is affirmed.



 

 Bea Ann Smith

Before Justices B. A. Smith, Patterson and Pemberton

Affirmed

Filed: November 4, 2005

1. See Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws. 2039, 2039-64,
repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 884
(current version at Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001-.507 (West 2005)). Kincaid's
claim is governed by article 4590i because she filed suit before the article's effective date of repeal,
September 1, 2003. For convenience, we cite to article 4590i and its statutory sections rather than
the Act number.