Affirmed and Memorandum Opinion filed May 17, 2007








Affirmed and Memorandum Opinion filed May 17, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01130-CV

____________

 

JOHN COX, Appellant

 

V.

 

CENTERPOINT ENERGY, INC. D/B/A
RELIANT ENERGY HL&P, AND KENNETH RAYMOND DUBOIS, Appellees

 



 

On Appeal from the 280th
District Court

Harris County, Texas

Trial Court Cause No. 03-47013

 



 

M E M O R A N D U M   O P I N I O N

This is an appeal from a final judgment rendered on a jury=s verdict in favor
of appellant, John Cox.   Appellant challenges the factual sufficiency of the
evidence supporting the jury=s apportionment of liability as well as
the jury=s award of no
damages for (1) physical impairment in the past and in the future; (2) 
physical pain and mental anguish in the future; and (3) the loss of future
earning capacity.  We affirm.








Factual and Procedural Background

A.      Appellant=s Traffic Accident

At the time of the events underlying this litigation,
appellant was a truck driver operating out of Corpus Christi.  On April 25,
2002 appellant was in Houston to pick up a ladder and other items and deliver
them to Corpus Christi.  On his way to pick up the ladder, appellant was
traveling north on Telephone Road when Robert Blair pulled out of a parking lot
in front of appellant=s truck to make a left turn to travel
south on Telephone Road.  Oncoming traffic prevented Blair from completing his
left turn and he suddenly stopped his truck and trailer in the narrow painted
median of Telephone Road, blocking appellant=s way.  Appellant
testified that Blair did not stop before pulling out into Telephone Road and
that he was surprised when Blair stopped his truck and trailer in the median. 
Despite his surprise, appellant was able to stop his truck short of Blair. 
Appellee, Kenneth Raymond DuBois, a Centerpoint Energy, Inc. (ACenterpoint@) employee, was
traveling north on Telephone Road behind appellant.  A split second after
appellant stopped, DuBois, unable to stop his truck in time, collided with the
rear end of appellant=s trailer.  At impact, appellant testified
his body went forward slightly and that his truck tapped the back end of Blair=s trailer.  The
air bags in appellant=s and DuBois=s trucks did not
deploy as a result of the collision.  In addition, appellant reported to one of
his treating physicians that the accident was a low impact collision.  Finally,
the front of appellant=s truck was not damaged as a result of the
collision with Blair=s trailer.  Following the collision, all
three drivers pulled their vehicles into nearby parking lots to wait on the
police.  While they were waiting, appellant told DuBois and Blair that Blair
had pulled out in front of him.  The police accident report indicated the
accident was minor, with no injuries.








Once the police had completed their investigation at the
scene, appellant continued on to pick up the ladder.  From there, because his
neck was stiff and his shoulder was bothering him, appellant went to Concentra
Medical Clinic in Houston.  X-rays taken there revealed no fractures or other
injuries and appellant was instructed to follow up with the Concentra clinic in
Corpus Christi.  Appellant then drove his truck back to Corpus Christi.  It was
during this return trip to Corpus Christi that appellant began to experience
even more pain in his shoulder.

B.      Appellant=s Neck and
Shoulder Surgeries

The day after his return home, appellant went to the Corpus
Christi Concentra clinic.  The Concentra doctors sent appellant to physical
therapy, which was unsuccessful in resolving his neck and shoulder pain. 
Appellant was eventually referred to Dr. Borkowski, an orthopedic surgeon, for
his neck pain, and Dr. Breckenridge, another orthopedic surgeon, for his
shoulder pain.  At that time, while he still had some neck pain, appellant=s chief complaint
was his shoulder.  When conservative treatment was not successful in relieving
appellant=s neck and shoulder issues, both doctors informed
appellant the remaining treatment option was surgery.  Appellant was unwilling
to undergo surgery at that time and he continued receiving conservative
treatment.

After the accident, appellant did not return to work until
November 2002, when he accepted a position as a truck dispatcher.  After
appellant had worked for approximately a month and a half, the pain in the area
between his neck and shoulder became so severe appellant was unable to continue
working.  As a result of appellant=s continuing neck
pain, Dr. Borkowski recommended surgery and on January 23, 2003, Dr. Borkowski
performed a diskectomy and fusion on appellant=s neck.  Following
the neck surgery, appellant was required to wear a neck brace for two weeks,
then a soft collar for two months.  Dr. Borkowski testified the one hour
surgery was successful and appellant had no complications arising out of the
surgery.








Following the neck surgery, appellant still had pain in his
left shoulder.  Appellant returned to Dr. Breckenridge, who diagnosed appellant
with rotator cuff tendinitis in his left shoulder.  In July 2003 Dr.
Breckenridge performed an arthroscopic procedure on appellant=s left shoulder. 
During the thirty minute operation, Dr. Breckenridge noted and repaired a
small, partial tearing in appellant=s rotator cuff
that had not been previously discovered.  According to Dr. Breckenridge, the
shoulder surgery was successful with no complications.  Appellant had to wear a
sling on his left arm for about a week following the surgery.

C.      Appellant=s Post-Surgery
Condition

Dr. Borkowski testified that, in his opinion, he did not
expect appellant to experience chronic pain following the neck surgery. 
Despite Dr. Borkowski=s prognosis, following his neck surgery,
appellant continued to report neck pain.  Dr. Borkowski testified appellant had
poor posture and he recommended rehabilitation to improve appellant=s posture and neck
alignment.  Dr. Borkowski also testified regarding his post-surgery
recommendations for appellant.  Dr. Borkowski recommended that (1) while
appellant did not need any future medical treatment, he should still receive an
annual examination of his neck, at a cost between $50 and $100; (2) appellant
should use proper neck posture; and, (3) while he would not place any specific
lifting restrictions on appellant, appellant should be careful when lifting.

In the fall of 2003, appellant complained to Dr.
Breckenridge that his left shoulder pain had gotten worse.  Dr. Breckenridge
testified he had no medical explanation for appellant=s continuing
shoulder pain following the successful shoulder surgery.  By September 30,
2003, Dr. Breckenridge was recommending that appellant take anti-inflammatories
as needed for his left shoulder pain.  Dr. Breckenridge performed an impairment
rating on appellant and determined appellant has a 19% permanent impairment
rating.  In November 2003 Dr. Breckenridge released appellant for work with
restrictions against heavy or repetitive overhead lifting.  As for any
potential future medical treatment, Dr. Breckenridge opined that appellant may require
an occasional cortisone injection in addition to over-the-counter
anti-inflammatories.








In October 2004 appellant saw Dr. John Obermiller, who is
board certified in physical medicine rehabilitation, for an independent medical
examination.  Dr. Obermiller agreed with Dr. Breckenridge=s 19% impairment
rating and the restriction against heavy or repetitive overhead lifting.  Dr.
Obermiller also testified that appellant=s post surgery
pain could be caused by scar tissue.  Dr. Obermiller testified the appropriate
remedy for appellant=s continuing complaints of pain would be
anti-inflammatory medications, possibly cortisone injections, and therapeutic
exercise.  

During trial appellant testified he still drives the same
standard transmission truck for personal use that was involved in the April
2002 accident.  Appellant also testified that his only non-work activity that
was impacted by the April 2002 accident was fishing.  Appellant testified that
he could still fish, it is just not as easy as before.  Finally, at the time of
trial, appellant was still not working, but he was training for a new career as
a licensed home inspector.  Dr. Breckenridge had referred appellant to the
Texas Rehabilitation Commission, which recommended home inspection because it
offered appellant the opportunity to earn approximately the same amount of
money as trucking.  Appellant testified he would complete the training within a
few months of the trial. 

D.      Trial
Testimony Regarding Appellant=s Pre-Accident
Condition and Vehicle Damage

During his deposition in this litigation, appellant
testified he had never had any type of pain or problems with his neck, left
shoulder, or left arm.  Appellant also did not disclose any prior complaints
about neck and left shoulder pain to the surgeons treating him. During trial,
doctors Borkowski, Breckenridge, and Obermiller all initially opined that the
problems that led to appellant=s surgeries were related to appellant=s April 2002 accident. 
However, evidence introduced during trial revealed that in November 1999
appellant saw his family physician, Dr. Castro, for neck and left shoulder pain
that radiated into his arm and that Dr. Castro diagnosed appellant with a neck
spasm and left shoulder tendinitis.








When he learned of the prior complaints, Dr. Borkowski
testified that appellant had a pre-existing condition in his neck and that, at
a minimum, this condition was contributing to appellant=s symptoms.  Dr.
Breckenridge testified that appellant=s symptoms in
November 1999 were virtually identical to the symptoms that he treated in 2002
and 2003.  In addition, Dr. Breckenridge testified that, more often than not,
rotator cuff damage, which includes partial tearing, does not occur from
trauma, but instead happens gradually from aging, continued overuse, repetitive
activity, or a combination of those factors.[1] 
Finally, Dr. Breckenridge conceded that he could not say whether the small,
partial tear he had repaired in appellant=s left rotator
cuff existed prior to the April 2002 accident.

During trial appellant introduced into evidence a receipt
showing work done on appellant=s truck following the accident, implying
the damage was caused by the accident.  However, during cross examination,
appellant admitted items on the receipt should not have been included as the
work performed was not related to the accident.

E.      The Jury=s Verdict








The case was submitted to the jury and the jury awarded
appellant: (1) $31,865.96 for past medical expenses; (2) $1,000.00 for future
medical expenses; (3) $36,000.00 for loss of earning capacity in the past; and
(4) $15,000.00 for physical pain and mental suffering in the past.  The jury
did not award appellant any damages for: (1) past or future impairment; (2)
loss of earning capacity in the future; and physical pain and mental suffering
in the future.  Finally, the jury determined that Blair was 75% responsible for
the accident while DuBois was only 25% responsible.  Based on the jury=s answers, the
trial court entered judgment in favor of appellant and against DuBois and
Centerpoint, for $20,966.49.  This appeal followed.

Discussion

In four issues, appellant challenges the factual
sufficiency of the evidence supporting the jury=s apportionment of
liability as well as the jury=s award of no damages for (1) physical
impairment in the past and in the future; (2)  physical pain and mental anguish
in the future; and (3) the loss of future earning capacity.  We address the
damages issues first.

A.      Damages     

1.       Standard
of Review








To sustain a challenge to the factual sufficiency of a jury=s failure to award
damages, we consider and weigh all of the evidence, both in support of and
against the findings, in order to decide whether the verdict should be set aside. 
Doctor v. Pardue, 186 S.W.3d 4, 17 (Tex. App.CHouston [1st
Dist.] 2006, pet. denied) (citing Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986)).  We will uphold the jury=s verdict unless
it is so against the great weight and preponderance of the evidence as to be
manifestly unjust or shocking to the conscience.  Id.  We may not
substitute our judgment for that of the jury, even if the evidence would
clearly support a different result.  Nip v. Checkpoint Systems, Inc.,
154 S.W.3d 767, 769 (Tex. App.CHouston [14th Dist.] 2004, no pet.).  The
jury is the sole judge of the credibility of the witnesses and the weight to
the given to their testimony.  Golden Eagle Archery, Inc. v. Jackson,
116 S.W.3d 757, 761 (Tex. 2003).  When someone suffers personal injuries, the
damages fall within two broad categories: economic and non-economic damages.  Id.
at 763.  Texas recognizes the following categories of non-economic damages:
pain, suffering, mental anguish, disfigurement, and physical impairment.  Id.
at 769.  These categories of non-economic damages may overlap.  Id. at
770.  When, as in this case, the jury=s failure to award
damages in more than one overlapping category is challenged, we must first
determine if the evidence unique to each category is factually sufficient.  Id.
at 775.  If it is not, we must then consider all of the overlapping
evidence, together with the evidence unique to each category, to determine if
the total amount awarded in the overlapping categories is factually
sufficient.  Id.  This standard of review gives due regard to a jury=s choice of whether
to award damages and if so, how to categorize those damages that could
reasonably fall into more than one category of damages.  Id. 

In the damages question in this case, the jury had eight
blanks to fill in: (1) past physical pain and mental anguish; (2) future
physical pain and mental anguish; (3) past loss of earning capacity; (4) future
loss of earning capacity; (5) past physical impairment; (6) future physical
impairment; (7) past medical expenses; and (8) future medical expenses.  None
of the damages categories were defined.  The jury was instructed to consider
each element separately and to not include damages for one element in any other
element.  We must presume the jury followed this instruction unless the record
demonstrates otherwise.  Id. at 771.

2.       The Jury=s Award of Zero
Damages for Past and Future Physical Impairment is Not Against the Great Weight
and Preponderance of the Evidence








The jury awarded appellant zero damages for past and future
physical impairment.  Physical impairment, sometimes called loss of enjoyment
of life, encompasses the loss of the injured party=s former
lifestyle.  General Motors Corp. v. Burry, 203 S.W.3d 514, 554 (Tex.
App.CFort Worth 2006,
pet. filed).  In his first issue, appellant argues the objective evidence of
his physical impairment is so overwhelming that the jury=s decision to
award no damages is clearly wrong and unjust.  In support of this argument,
appellant points out that following the April 2002 accident: (1) he underwent
physical therapy; (2) he had shoulder injections as a result of the pain he was
experiencing; (3) he experienced numbness; (4) he underwent a nerve conduction
study that demonstrated his nerve conduction was being affected by pressure on
the nerve; (5) he underwent neck and shoulder surgery; (6) following the neck
surgery he was required to first wear a neck brace and then a soft collar; (7)
following the shoulder surgery he was required to wear a sling; (8) his
surgeons identified objective physical injuries that were related to the April
2002 accident; (9) several doctors determined that he had a 19% whole body
impairment; and (10) his ability to fish was impacted.

Initially, while appellant emphasizes the objective
evidence of his injury, the Texas Supreme Court has determined that a reviewing
court should not conclude that a jury=s failure to award
any damages for physical impairment is against the great weight and
preponderance of the evidence simply because there is objective evidence of an
injury.  Golden Eagle Archery, Inc., 116 S.W.3d at 774. This is so
because the determination that a plaintiff has not and will not suffer physical
impairment apart from that already compensated in other categories of damages
is uniquely within the jury=s province.  Id.  








Here, without a definition of Aphysical
impairment@ to guide it, the jury could have decided to
compensate appellant for each of the items he identified above, with the
exception of the impact on his fishing, under multiple categories, including
past pain and mental suffering, past medical expenses, and past loss of earning
capacity.  Id. at 773. Accordingly, the only item of damage unique to
physical impairment damages identified by appellant was the impact on his
ability to engage in fishing.  See id. at 772 (stating that if other
elements such as pain, suffering, mental anguish, and disfigurement are
submitted, there is little left for the category of physical impairment other
than loss of enjoyment of life).  With regard to fishing, appellant testified
he could still fish, it was just more difficult than before the accident.  The
jury could have discredited appellant=s testimony in its
entirety and decided his ability to fish was not impacted by the accident.  See
Peter v. Ogden Ground Servs., Inc., 915 S.W.2d 648, 650 (Tex. App.CHouston [14th
Dist.] 1996, no writ) (holding if a plaintiff=s complaints are
subjective in nature and incapable of direct proof, the trier of fact may award
zero damages).  Or, the jury could have credited appellant=s testimony and
decided appellant should not receive any compensation for his alleged loss of
lifestyle.  Golden Eagle Archery, Inc., 116 S.W.3d at 773.  As
the evidence supporting the jury=s decision is not
so against the great weight and preponderance of the evidence as to be
manifestly unjust or shocking to the conscience, we overrule appellant=s first issue.

3.       The Jury=s Award of Zero
Damages for Future Pain and Mental Anguish is Not Against the Great Weight and
Preponderance of the Evidence

In his third issue, appellant argues the jury=s refusal to award
damages for future pain and mental anguish is against the great weight and
preponderance of the evidence.  In support of his argument, appellant points
out his own testimony, as well as that of his doctors, that he continued to
have neck and shoulder pain following his two surgeries.

Based on appellant=s continuing
reports of pain, each of appellant=s doctors
testified regarding appellant=s post-surgery pain.  Dr. Borkowski,
appellant=s neck surgeon, testified that (1) appellant=s neck surgery was
successful, (2) he did not recommend any future medical treatment for
appellant, (3) he would not impose any restrictions on appellant other than an
admonition that he should be careful when lifting, (4)  he did not anticipate
that, following his neck surgery, appellant would experience chronic pain, and
(5) that appellant had poor posture and that was a reason he prescribed
physical therapy for appellant.  Dr. Breckenridge, appellant=s shoulder
surgeon, testified that (1) appellant=s shoulder surgery
was successful, (2) there was no medical explanation for appellant=s continued
reports of pain, (3) his only recommendations for appellant=s pain were
anti-inflammatories as needed, and possibly cortisone injections.  Finally, Dr.
Obermiller, who saw appellant only one time for an independent medical
examination, recommended that appellant use therapeutic exercise and
anti-inflammatories to address his continued pain.  Dr. Obermiller also
testified that appellant might need occasional cortisone injections as well.








The measure of damages in a personal injury case is not
subject to precise mathematical calculation.  Weidner v. Sanchez, 14
S.W.3d 353, 372 (Tex. App.CHouston [14th Dist.] 2000, no pet.).  Each
case must be measured by its own facts, and considerable discretion and
latitude are given to the jury.  Id.  It is the jury=s unique province
to resolve the speculative matters of future pain and mental anguish and the
amount of damages attributable thereto.  Id.  As long as sufficient
probative evidence exists to support the jury=s verdict, we will
not substitute our judgment for that of the jury.  Id.  Here, appellant=s challenge to the
jury=s refusal to award
damages for future pain and mental anguish is based entirely on either his
subjective testimony that he continues to experience pain, or the testimony of
his doctors, which, in turn, was based entirely on appellant=s subjective
reports that he continues to experience pain.  Based on appellant=s inconsistent
testimony regarding his pre-accident reports of similar pain, the jury was free
to disbelieve appellant=s testimony regarding his continued pain
and the doctor=s testimony based on appellant=s subjective
reports.  See Gonzalez v. Wal-Mart Stores, Inc., 143 S.W.3d 118, 123
(Tex. App.CSan Antonio 2004, no pet.) (holding a jury may ignore
a complaining party=s subjective evidence); Waltrip v.
Bilborn Corp., 38 S.W.3d 873, 880 n.1 (Tex. App.CBeaumont 2001,
pet. denied) (stating the jury is free to believe or disbelieve the plaintiff=s subjective
complaints of pain or the testimony of any other witness, including the
plaintiff=s doctor, who testified he was relying on what the
plaintiff told him); Rivas v. Garibay, 974 S.W.2d 93, 96 (Tex. App.CSan Antonio 1998, 
pet. denied) (holding a jury may disbelieve any witness, including a physician,
even though that witness=s testimony is not contradicted).  In
addition, the jury could have decided appellant=s current pain was
the result of pre-existing conditions or other causes, such as his poor
posture.  Gonzalez, 143 S.W.3d at 123.

As stated above, the factfinder is the sole judge of the
credibility of the witnesses and the weight to be given their testimony.  Id.
at 124.  The factfinder may believe one witness and disbelieve another, and resolve
inconsistencies in testimony.  Id.  Keeping this in mind, we find the
evidence is factually sufficient to sustain the jury=s finding of zero
damages for future pain and mental anguish.  We overrule appellant=s third issue.








4.       The Jury=s Award of Zero
Damages for Future Loss of Earning Capacity is Not Against the Great Weight and
Preponderance of the Evidence

In his fourth issue, appellant complains of the jury=s decision to
award zero damages for future loss of earning capacity.  In support of this
issue, appellant cites his own testimony that he was no longer able to work as
a truck driver due to his injuries from the April 2002 accident, as well as the
testimony of  Dr. Breckenridge and Dr. Obermiller that appellant would have
permanent lifting restrictions and could no longer work as a truck driver for
that reason.

The proof of future loss of earning capacity is always
uncertain and must be left largely to the discretion of the jury.  Strauss
v. Continental Airlines, Inc., 67 S.W.3d 428, 435 n.1 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  The measure of this type of damages is the plaintiff=s diminished
earning capacity in the future directly resulting from the injuries he has
sustained.  Id. at 435.  Recovery for loss of earning capacity is not
based on actual earnings lost, but rather on the loss of the capacity to earn
money.  Id.  In other words, loss of earning capacity encompasses the
plaintiff=s ability to work after the date of trial.  Metropolitan
Life Ins. Co. v. Haney, 987 S.W.2d 236, 244 (Tex. App.CHouston [14th
Dist.] 1999, pet. denied).  Damages for loss of earning capacity do not have to
be based on any specific degree of physical impairment, but can be based on a composite
of all of the factors affecting earning capacity.  Id.  However, to
recover for loss of earning capacity, a plaintiff must show that he has a
physical impairment that affects his ability to earn a living.  Id. at
245.      

In addressing this issue, appellant overlooks Dr. Borkowski=s testimony that
he would not impose any specific restrictions on appellant=s work activity. 
The jury could have disbelieved the testimony highlighted by appellant and
instead believed Dr. Borkowski=s and concluded that appellant did not
have a physical impairment affecting his ability to earn a living.   Gonzalez,
143 S.W.3d at 123.  








Appellant also does not address Dr. Breckenridge=s testimony that,
if he had known about appellant=s history of shoulder tendinitis and
degenerative changes in appellant=s cervical spine
prior to the April 2002 accident, he would have cautioned appellant about
continuing in a line of work that involved overhead lifting.  The jury thus
could have concluded that any physical restrictions on appellant=s ability to earn
a living in the future were the result of pre-existing conditions and not the
April 2002 accident.  Id. 

Finally, appellant ignores his own testimony that he was
receiving re-training for a career as a home inspector, a career that, within a
short time after trial, would enable him to earn approximately the same income
as his trucking business.  Thus, the jury could have concluded that even if
appellant was physically unable to continue working as a truck driver as a
result of the April 2002 accident, his ability to earn the same income was not
impacted. Strauss, 67 S.W.3d at 435.

Because the evidence is factually sufficient to sustain the
jury=s finding of zero
damages for future loss of earning capacity, we overrule appellant=s fourth issue.

B.      Apportionment
of Responsibility

In his second issue, appellant challenges the jury=s apportionment of
responsibility for the April 2002 accident between Blair and DuBois.

1.       Standard
of Review








The jury is given wide latitude in performing its sworn
duty to serve as the factfinder in allocating responsibility for an accident
pursuant to section 33.003 of the Civil Practices and Remedies Code.  Tex. Civ. Prac. & Rem. Code Ann. ' 33.003 (Vernon
1997); Rosell v. Central West Motor Stages, Inc., 89 S.W.3d 643, 659
(Tex. App.CDallas 2002, pet. denied).  When reviewing a factual
sufficiency challenge, we consider, weigh, and examine all of the evidence, and
sustain the challenge only if the evidence is so weak as to render the jury=s finding clearly
wrong and manifestly unjust.  Rosell, 89 S.W.3d at 659.  Even if a
different percentage allocation could be supported by the evidence, an
appellate court may not substitute its judgment for that of the jury.  Samco
Props., Inc. v. Cheatham, 977 S.W.2d 469, 478 (Tex. App.CHouston [14th
Dist.] 1998, pet. denied). 

2.       The Jury=s Allocation of
Responsibility is Not Against the Great Weight and Preponderance of the
Evidence

Appellant argues the jury=s decision to
assign 75% of the responsibility to Blair and only 25% to DuBois is against the
great weight and preponderance of the evidence.  In support, he cites his own
testimony that (1) he saw Blair and had time to bring his truck to a stop; and
(2) he heard DuBois state after the accident that, prior to the accident, he
was looking out the window and did not see appellant=s brake lights. 
Appellant also cites DuBois=s testimony that, prior to the accident,
he saw Blair preparing to make his turn across Telephone Road.

In his recital of the evidence supporting his challenge,
appellant overlooks other evidence also considered by the jury.  This evidence
includes the following: (1) Blair pulled out of a parking lot and across two
lanes of Telephone Road without stopping first to check for traffic; (2) as
oncoming southbound traffic on Telephone Road prevented his completion of his
turn, Blair suddenly stopped in the narrow median, blocking appellant=s path; (3)
appellant=s testimony that he would not have stopped at the
point in Telephone Road where Blair stopped; (4) appellant=s testimony that
he was surprised by Blair=s maneuver, had to stop suddenly, and was
immediately struck from behind by DuBois; and (5) DuBois=s testimony that
he had some responsibility for the accident as he was unable to stop quickly
enough, but that Blair caused the accident by pulling into the narrow median
and suddenly stopping his vehicle. 








The evidence recounted above, constitutes factually
sufficient evidence that both Blair and DuBois were at fault.  As there is
factually sufficient evidence that both Blair and DuBois were at fault, we find
no basis for interfering with the jury=s allocation of
responsibility.  Accordingly, we overrule appellant=s second issue.

Conclusion

Having overruled all of appellant=s issues on appeal, we affirm the
trial court=s final judgment.

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed May 17, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.









[1]  Appellant=s
work history reveals that prior to becoming a truck driver, he worked for eight
or nine years at an auto parts warehouse that required over the head work
loading parts onto and taking parts off storage shelves.  In addition, as a
truck driver, appellant was required to do frequent over the head work when he
secured his loads onto his trailer.  Dr. Borkowski testified that someone whose
job involved frequent overhead use of their arms might be at an increased risk
of contracting tendinitis.